UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| RICHARD LEBRON, | |
|---|---|
| Plaintiff, | 19-CV-2598 (JMF) |
| -against- | **MEMORANDUM OPINION AND ORDER GRANTING PRO BONO COUNSEL** |
| RAUL RAMOS, M.D., et al., | |
| Defendants. | |

Jesse M. Furman, United States District Judge:

For the reasons stated below, the Court directs that the Clerk of Court seek pro bono counsel to enter a limited appearance for the purpose of conducting discovery in the above-captioned action. Counsel will file a Notice of Limited Appearance as Pro Bono Counsel.

## LEGAL STANDARD

The *in forma pauperis* statute provides that the courts "may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1). Unlike in criminal cases, in civil cases, there is no requirement that courts supply indigent litigants with counsel. *Hodge v. Police Officers*, 802 F.2d 58, 60 (2d Cir. 1986). Instead, the courts have "broad discretion" when deciding whether to seek *pro bono* representation for a civil litigant. *Id.* Even if a court does believe that a litigant should have a free lawyer, under the *in forma pauperis* statute, a court has no authority to "appoint" counsel, but instead, may only "request" that an attorney volunteer to represent a litigant. *Mallard v. U.S. Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296, 301-310 (1989). Moreover, courts do not have funds to pay counsel in civil matters. Courts must therefore request the services of *pro bono* counsel sparingly, and with reference to public benefit, in order to preserve the "precious commodity" of volunteer-lawyer time for those litigants whose causes are truly deserving. *Cooper v. A. Sargenti Co., Inc.*, 877 F.2d 170, 172-73 (2d Cir. 1989) (per curiam).

In *Hodge*, the Second Circuit Court of Appeals set forth the factors a court should consider in deciding whether to grant a litigant's request for *pro bono* counsel. 802 F.2d at 61-62. Of course, the litigant must first demonstrate that he or she is indigent, for example, by successfully applying for leave to proceed *in forma pauperis*. The court must then consider whether the litigant's claim "seems likely to be of substance" — "a requirement that must be taken seriously." *Id.* at 60-61. If these threshold requirements are met, the court must next consider such factors as:

> the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues[,] and any special reason in th[e] case why appointment of counsel would be more likely to lead to a just determination.

*Id.*; *see also Cooper*, 877 F.2d at 172 (listing factors courts should consider, including the litigant's efforts to obtain counsel). In considering these factors, district courts should neither apply bright-line rules nor automatically deny the request for counsel until the application has survived a dispositive motion. *See Hendricks v. Coughlin*, 114 F.3d 390, 392-93 (2d Cir. 1997). Rather, each application must be decided on its own facts. *See Hodge*, 802 F.2d at 61.

## DISCUSSION

Plaintiff filed a Request to Proceed *in Forma Pauperis* (IFP), which the Court granted. *See* ECF No. 7. Plaintiff therefore qualifies as indigent.

In his Complaint, Plaintiff asserts claims under 42 U.S.C. § 1983, alleging that officials at the North Infirmary Command of Rikers Island were deliberately indifferent to the serious medical needs arising from his kidney disease and from an injury he sustained during dialysis, and that the officials caused him unnecessary pain and suffering by denying him pain medication. *See* ECF No. 4, at ¶¶ 20-22. Plaintiff alleges that he suffers from a genetic condition called polycystic kidney disease. *Id.* ¶ 1. Plaintiff alleges that in 2018, he was transferred to the North Infirmary Command and placed under the care of Defendant Dr. Raul Ramos. *Id.* ¶ 4. At the time, Plaintiff was

allegedly managing his condition through "healthy living habits and proper medical care," including prescription pain medication. *Id.* ¶¶ 5-6. Dr. Ramos, however, allegedly denied Plaintiff access to his pain medication, causing Plaintiff to be "constantly in severe pain," "which Ramos [w]as aware of." *Id.* ¶¶ 6-7, 16. Dr. Ramos allegedly also prevented Plaintiff from being examined by a renal specialist and from being transferred to Bellevue Hospital for treatment. *Id.* ¶¶ 9-10. Plaintiff alleges that as a result of the lack of treatment, his blood pressure "rose to an unhealthy level" and he suffered "End Stage renal failure." *Id.* ¶¶ 7, 14. Plaintiff alleges that he now "must undergo dialysis three times a week and his life expectation is . . . significantly reduced." *Id.* ¶ 15. During one dialysis session, Defendant Wolfe allegedly cut Plaintiff while removing a bandage. *Id.* ¶ 18. The wound allegedly ruptured a week later, and due to Defendants' delay in obtaining emergency treatment, Plaintiff lost "3 pints of blood" and suffered seizures and heart failure. *Id.* Plaintiff alleges that "he is now epileptic and may have to take seizure medication for the rest of his life." *Id.*

The Court finds that Plaintiff's claim is "likely to be of substance." *Hodge*, 802 F.2d 61-62. "Deliberate indifference to serious medical needs may be manifested by 'intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.'" *Randle v. Alexander*, No. 10-CV-9235 (BSJ) (KNF), 2011 WL 1226228, at *1 (S.D.N.Y. Mar. 22, 2011) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976)). Plaintiff alleges that Defendants denied him access to both the prescription pain medication he had been using to treat his disease and the additional treatment necessitated by the deterioration of his condition and the injury he suffered during dialysis. Given the severity and specificity of Plaintiff's allegations, Plaintiff "appears to have some chance of success" as required by *Hodge*. *See* 802 F.2d at 60-61.

The Court also finds that the other *Hodge* factors weigh in favor of granting Plaintiff's application. As an inmate at Rikers, Plaintiff will have little opportunity to investigate the crucial

3

facts. In addition, this case will likely involve the cross-examination of Defendants, including at depositions, as well as complex legal issues, including those related to expert and other evidence about Plaintiff's medical condition. *See* ECF No. 35, at 3 (noting that Defendants "anticipate requiring expert discovery"). Plaintiff has indicated that he has "no legal education or experience to represent [him]self in this case." ECF No. 3, at ¶ 8. Accordingly, representation would "lead to a quicker and more just result by sharpening the issues and shaping examination." *Hodge*, 802 F.2d at 61.

Given the early stage of the proceedings, the Court will request that counsel appear for the limited purpose of conducting discovery. In addition, pro bono counsel may engage in settlement discussions. The Court will consider expanding the appearance for all purposes later in the case.

Under the Court's Standing Order regarding the Creation and Administration of the Pro Bono Fund (16-MC-0078), pro bono counsel may apply to the Court for reimbursement of certain out-of-pocket expenses spent in furtherance of Plaintiff's case. The Pro Bono Fund is especially intended for attorneys for whom pro bono service is a financial hardship. *See* http://www.nysd.circ2.dcn/docs/prose/pro_bono_fund_order.pdf.

Pro bono counsel will not be obligated for any aspect of Plaintiff's representation beyond the matters described in this order. In particular, pro bono counsel will not be required to respond to a dispositive motion. In the event that Defendants file a dispositive motion, pro bono counsel may seek appropriate relief, including an extension of Plaintiff's time to respond, or an expansion of pro bono counsel's role to include responding to the motion. Absent an expansion of the scope of pro bono counsel's representation, pro bono counsel's representation of Plaintiff will end upon completion of discovery.

Upon the filing by pro bono counsel of a Notice of Completion, the representation by pro bono counsel of Plaintiff in this matter will terminate, and pro bono counsel will have no further obligations or responsibilities to Plaintiff or to the Court in this matter.

## CONCLUSION

For the foregoing reasons, the Clerk of Court is directed to attempt to locate pro bono counsel to represent Plaintiff for the limited purposes described above.  The Court advises Plaintiff that there are no funds to retain counsel in civil cases and the Court relies on volunteers.  Due to a scarcity of volunteer attorneys, a lengthy period of time may pass before counsel volunteers to represent Plaintiff. If an attorney volunteers, the attorney will contact Plaintiff directly.  There is no guarantee, however, that a volunteer attorney will decide to take the case, and plaintiff should be prepared to proceed with the case without an attorney.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore IFP status is denied for the purpose of an appeal.  *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

**In light of the foregoing, the initial pretrial conference scheduled for November 25, 2019, is ADJOURNED** *sine die***, and will be rescheduled in due course.**

The Clerk of Court is directed to mail a copy of this Order to Plaintiff.

SO ORDERED.

Dated: November 21, 2019
      New York, New York

                                  JESSE M. FURMAN
                               United States District Judge